UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RIVER LANDON LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICAH HINKLE, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-04904-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 28 |

**INTRODUCTION**

This is a case about the application of Cal. Gov't Code § 65913.4 (SB 35), which provides a streamlined, ministerial approval process for development plans that satisfy a scoping consultation assessing the development's effect on California Native American cultural resources and meet certain "objective planning standards," including that the "development is a multifamily housing development that contains two or more residential units." While multifamily housing is not defined in SB 35, the statute provides that the California Department of Housing and Community Development (HCD) may adopt guidelines that support or clarify terms in SB 35, and the HCD has defined "multifamily" as requiring "two or more attached residential units."

River Landon LLC applied for approval under SB 35 for two development projects (one with twenty-nine units and a second with fourteen units). The City took over two years to complete the

ORDER – No. 25-cv-04904-LB

scoping consultation and denied both projects because they were for detached, single-family housing projects.

River Landon alleges that the prolonged scoping consultation and denial of its projects violated SB 35 and its constitutional rights, bringing claims against the defendants (the City of San Rafael, its mayor, the city council, the director of community and economic development, and the planning manager of the city planning division) for regulatory takings under federal and state law based on the denial of its twenty-nine and fourteen-unit applications under SB 35 (claim one), a temporary regulatory taking under federal and state law for the prolonged scoping consultation (claim two), procedural and substantive due process violations for the prolonged scoping consultation and project denials (claims three and four), violation of SB 35's scoping-consultation requirement (claim five), violation of SB 35 for wrongfully denying the twenty-nine and fourteen-unit applications (claims six and seven), breach of mandatory duties related to the scoping consultation and project denials under Cal. Gov't Code § 815.6 (claim eight), and violation of the Housing Accountability Act, Cal. Gov't Code § 65589.5, for the same violations (claims nine through eleven).

The City moved to dismiss, asserting that (1) the SB 35 claims fail because River Landon's applications were for single-family projects that did not qualify for streamlined approval under SB 35, (2) the takings, due process, and state-law claims fall with the SB 35 claims, and (3) the constitutional claims are not ripe and fail to state a claim. River Landon responds that (1) the defendants' interpretation of SB 35 is flawed and inconsistent with its purpose of increasing the housing supply, (2) a scoping consultation is required regardless of whether an application is for multifamily housing, (3) its constitutional claims are ripe under the futility exception, (4) the City's denying its projects and prolonging the scoping consultation violated River Landon's due process rights, and (5) the merits of the takings claims are inappropriate to assess on a motion to dismiss.

The court grants the motion. The SB 35 claims (claims five, six, and seven) are dismissed because River Landon's proposed projects are not multifamily housing developments within the meaning of SB 35 as defined by the HCD. The takings claims (claims one and two) are dismissed because River Landon has other avenues to pursue development, and the City has not issued a final

United States District Court
Northern District of California

decision on the matter. The due-process claims (claims three and four) are dismissed because River Landon can challenge the City's determinations, and neither the duration of the scoping consultation nor the denial of the projects by the City shows the conscious-shocking conduct required for a plausible claim. The court declines to exercise supplemental jurisdiction over the remaining state-law claims (claims eight through eleven).

**STATUTORY SCHEME**

Under SB 35, "a development proponent may submit an application for a development that is subject to the streamlined, ministerial approval process provided by subdivision (c)" if it satisfies certain "objective planning standards," including that the "development is a multifamily housing development that contains two or more residential units." Cal. Gov't Code § 65913.4(a)(1). "It is the policy of the state that this section be interpreted and implemented in a manner to afford the fullest possible weight to the interest of, and the approval and provision of, increased housing supply." *Id.* § 65913.4(u).

"Multifamily" is not defined in SB 35, but it provides that the HCD "may review, adopt, amend, and repeal guidelines to implement uniform standards or criteria that supplement or clarify the terms, references, or standards set forth in this section." *Id.* § 65913.4(n). The HCD has defined multifamily as "a housing development with two or more attached residential units" that "does not include accessory dwelling units unless the project is for new construction of a single-family home with attached accessory dwelling units."[1]

Before submitting a formal application, the applicant must file a notice of intent to submit an application that includes all the information described in § 65941.1. *Id.* § 65913.4(b)(1)(A)(i). Section 65941.1 does not mention multifamily housing or attached walls. Once the local government receives a notice of intent, it "shall engage in a scoping consultation regarding the

---

[1] HCD Guidelines, Ex. 4 to Request for Judicial Notice – ECF No. 29 at 22 (§ 102(p)). The parties made requests for judicial notice, and the court judicially notices the materials. Fed. R. Evid. 201; *see* Requests for Judicial Notice – ECF Nos. 29, 37, 39. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 25-cv-04904-LB                    3

proposed development with any California Native American Tribe that is traditionally and culturally affiliated with the geographic area" and must "take into account the cultural significance of the resource to the culturally affiliated California Native American tribe." *Id.* § 65913.4(b)(1)(A)(ii), (B). "Consultation" is defined as the "meaningful and timely process of seeking, discussing, and considering carefully the views of others." *Id.* § 65913.4(b)(7)(A). The local government has thirty days from receipt of the notice of intent to provide an affiliated California Native American tribe with formal notice, a tribe has thirty days to accept the invitation to engage in a scoping consultation, and the local government has thirty days to commence the scoping consultation. *Id.* § 65913.4(b)(1)(A)(iii)(I)–(B). If the local government and tribe either "find that no potential tribal cultural resource would be affected by the proposed development" or enter into an enforceable agreement "on methods, measures, and conditions for tribal cultural resource treatment, the development proponent may submit" a formal application. *Id.* § 65913.4(b)(2)(A)–(C).

If a local government determines that an application under subdivision (c) "is consistent with the objective planning standards specified in subdivision (a)," as assessed under subdivision (c)(3), "the local government shall approve the development." *Id.* § 65913.4(c)(1). If the local government determines that a development submitted under SB 35 conflicts with the objective standards in subdivision (a), "the local government staff or relevant local planning and permitting department that made the determination shall provide the development proponent written documentation of which standard or standards the development conflicts with, and an explanation for the reason or reasons the development conflicts with that standard or standards." *Id.* "[A] development is consistent with the objective planning standards specified in subdivision (a) if there is substantial evidence that would allow a reasonable person to conclude that the development is consistent with the objective planning standards." *Id.* § 65913.4(c)(3).

**STATEMENT**

River Landon sought to develop a vacant property (approximately 1.4-acres) consisting of lots designated for residential use.[2] Between October 2020 and October 2022, River Landon submitted a two-unit project to the City eight times before the City determined that it was complete, but the City advised River Landon to withdraw the application and proceed under an alternate pathway.[3] River Landon opted to seek streamlined approval under SB 35 and submitted its notice of intent for a twenty-nine-unit project on May 15, 2023. On June 13, 2023, the City invited the California Native American Tribes traditionally affiliated with the property's geographic area to engage in a scoping consultation of the property.[4] On June 22, 2023, the Federated Indians of Graton Rancheria (FIGR) accepted the scoping consultation invitation.[5] River Landon "is informed and believes . . . that on August 14, 2023, the City met with FIGR to discuss the scoping consultation for the first time."[6]

In September 2023, archaeologists concluded that no cultural resources were found or threatened by the project and passed the results to FIGR.[7] In November 2023, River Landon submitted a formal application to the City for the twenty-nine-unit project.[8] Over the next four months, the City claimed it was meeting with the tribal representatives, but there are no records of meetings about the twenty-nine-unit project.[9] In March 2024, the City communicated to River Landon that FIGR had "requested some additional analysis for the project site" and that the City would accommodate that request.[10]

---

[2] First Am. Compl. (FAC) – ECF No. 26 at 3 (¶ 3), 6–7 (¶¶ 23–30).

[3] *Id.* at 8–10 (¶¶ 31–47).

[4] *Id.* at 10–11 (¶¶ 49–50, 53, 55).

[5] *Id.* at 11 (¶ 57).

[6] *Id.* at 12 (¶ 60).

[7] *Id.* (¶¶ 62–64).

[8] *Id.* (¶ 65).

[9] *Id.* at 13 (¶ 68).

[10] *Id.* (¶ 69).

In late March 2024, the City told River Landon that it had met with FIGR about the twenty-nine-unit project in August 2023, January 2024, and February 2024 and that FIGR was requesting an extension of the radius of the records search for the archeological survey from a quarter mile to a half mile.[11] In April 2024, the archeologists completed the records search and determined that there were no cultural resources within the project area, and River Landon requested that the City complete the scoping consultation by April 19, 2024.[12] In May 2024, FIGR's Tribal Chairman told River Landon that the City was holding up the project.[13]

In June 2024, the City told River Landon that the project's scoping consultation was unfinished.[14] In August 2024, River Landon sent a letter to the City saying that the City had "failed to carry out its ministerial duty to engage in a meaningful and timely scoping consultation process, and [was] instead weaponizing the consultation requirement to thwart this desperately needed housing project."[15] In January 2025, the archeologists contacted River Landon and informed them that FIGR had requested a canine survey be conducted.[16] Between March and May 2025, River Landon and the City were unable to resolve their disputes about completing the scoping consultation.[17]

River Landon filed this lawsuit in June 2025. Twenty days later, the scoping consultation concluded with an enforceable agreement to address and protect tribal cultural resources that might be present, and the City acknowledged that the project was deemed submitted under SB 35.[18]

In August 2025, City staff notified River Landon that its proposed twenty-nine-unit project was ineligible for ministerial approval under SB 35, determining that the project was "inconsistent with City standards as well as State law" and ineligible for SB 35 because the project "propose[d]

---

[11] *Id.* at 14 (¶ 72).

[12] *Id.* (¶¶ 73–75).

[13] *Id.* (¶ 77).

[14] *Id.* at 15 (¶ 80).

[15] *Id.* at 16 (¶ 85); Letter, Ex. A to FAC – ECF No. 26 at 48–51.

[16] FAC – ECF No. 26 at 17 (¶ 90).

[17] *Id.* at 17–19 (¶¶ 91–98).

[18] *Id.* at 19 (¶¶ 101–04).

United States District Court
Northern District of California

multiple, detached, independent single family dwellings per single family lot and [did] not constitute a multifamily housing development pursuant to either SB 35 or the San Rafael Municipal Code."[19] River Landon then submitted an alternative request for ministerial approval of a fourteen-unit project under SB 35, which the City denied in October 2025 because "the project [was] not a multifamily housing development" but instead "a mix of single detached family residences and detached ADUs on each lot."[20]

The parties consented to magistrate-judge jurisdiction.[21] 28 U.S.C. § 636(c)(1). The court held a hearing on February 5, 2026.

## LEGAL STANDARD

### 1. Rule 12(b)(6)

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 2. Principles of Statutory Construction

"In interpreting a state statute, [a court] must follow the state's rules of statutory interpretation." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022). "The

---

[19] *Id.* at 20 (¶ 106); Letter & Attachs., Ex. A to Request for Judicial Notice – ECF No. 37 at 8, 10 (cleaned up).

[20] FAC – ECF No. 26 at 20–21 (¶¶ 108–11); Letter & Attachs., Ex. B to Request for Judicial Notice – ECF No. 37 at 34, 36 (cleaned up).

[21] Consents – ECF Nos. 6, 17.

ORDER – No. 25-cv-04904-LB                7

United States District Court
Northern District of California

touchstone of statutory interpretation is the probable intent of the Legislature." *Hale v. S. Cal. IPA Med. Grp., Inc.*, 86 Cal. App. 4th 919, 924 (2001). The "first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning." *Id.* If "language that appears unambiguous on its face may be shown to have a latent ambiguity," "a court may turn to customary rules of statutory construction or legislative history for guidance." *Id.* "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." *Killgore*, 51 F.4th at 983. "When the language is clear and there is no uncertainty as to the legislative intent, [courts] look no further and simply enforce the statute according to its terms." *Id.*

## ANALYSIS

The motion largely turns on two issues: (1) whether "multifamily" housing under SB 35 requires attached structures and (2) whether the City's alleged failure to meet its scoping-consultation obligations under subsection (b) constitutes a temporary taking. Because SB 35 requires that formal applications meet the HCD's definition for multifamily housing, and River Landon's projects do not meet that definition, the claims based on the denial of those projects are not plausibly pleaded. Even assuming a violation of SB 35's scoping-consultation requirement, River Landon has not pleaded a plausible takings claim or violation of its due process rights.

### 1. Denial of Projects Under SB 35 (Claims Six and Seven)

The City contends that River Landon's claims that the City wrongfully denied approval for the twenty-nine and fourteen-units under SB 35 fail because SB 35 only applies to applications for multifamily housing, which requires "a housing development with two or more attached residential units" under HCD guidelines. River Landon's application is for detached, single-family housing.[22] River Landon counters that the SB 35 framework does not require a threshold determination about whether proposed development involves multifamily housing, the HCD's definition of multifamily should not be applied to SB 35 because it is inconsistent with its purpose

---

[22] Reply – ECF No. 38 at 7–12.

ORDER – No. 25-cv-04904-LB                    8

of favoring increasing the housing supply, and the City's interpretation of SB 35 would produce absurd results.[23] The City counters that River Landon's reading of SB 35 would make the term "multifamily" surplusage.[24]

The HCD definition applies, and thus, River Landon's twenty-nine and fourteen-unit projects do not meet SB 35's requirements.

To the extent that River Landon contends that SB 35 should cover single-family projects, the plain language of SB 35 supports the City's contention that SB 35 covers only multifamily housing projects. SB 35 states that for an application to be "subject to the streamlined, ministerial approval process provided by subdivision (c)," the development must be "a multifamily housing development that contains two or more residential units." If the legislature had intended for SB 35 to include single-family housing projects, it would not have specified a requirement for multifamily housing.[25]

River Landon contends that, under the same reasoning, multifamily housing should not require attached units because if the legislature had intended that requirement, it would have said so.[26] This is unpersuasive. The legislature did not write a requirement for attached units into the statute, but SB 35 allows the HCD to "review, adopt, amend, and repeal guidelines to implement uniform standards or criteria that supplement or clarify the terms, references, or standards set forth in this section."[27] Where the statute requires multifamily housing with two or more attached residential units, and River Landon's projects lack attached units (as determined by the City), it has not plead plausible claims for denial of its projects under SB 35.[28]

River Landon asserts that the court should not defer to the HCD definition because it is contrary to the statute's purpose, citing *New Commune DTLA LLC v. City of Redondo Beach*,

---

[23] Opp'n – ECF No. 36 at 11–21.

[24] Reply – ECF No. 38 at 8.

[25] *Id.*

[26] Opp'n – ECF No. 36 at 18.

[27] Reply – ECF No. 38 at 9.

[28] Mot. – ECF No. 28 at 12 n.3; Letter & Attachs., Ex. A to Request for Judicial Notice – ECF No. 37 at 8, 10; Letter & Attachs., Ex. B to Request for Judicial Notice – ECF No. 37 at 34, 36.

ORDER – No. 25-cv-04904-LB                    9

where the court rejected HCD guidelines that were "rewriting" the statutory requirements at issue by saying that overlays permitting nonresidential uses were allowable in a statute that did not permit nonresidential uses.[29] 115 Cal. App. 5th 111, 136–37 (2025). Here, HCD's defining of multifamily to require attached units neither allows something prohibited by the statute nor rewrites the statutory requirements of SB 35. It clarifies a term within the statute. River Landon's argument — that forcing applicants seeking to use SB 35 in single-family areas to propose "apartment-style structures" would create absurd results — is unpersuasive because a developer is not compelled to seek approval through SB 35.[30]

River Landon asserts that the City cannot rely on the HCD guidelines' definition of multifamily because it did not cite that definition in its denial letters.[31] But even though the letters do not cite the HCD guidelines, both letters informed River Landon that its projects were ineligible for SB 35's streamlined processing because they included single-family, detached housing.[32] River Landon points to the purpose and legislative history of the statute as support for applying SB 35 to projects with detached units, but neither alters the outcome because the plain meaning of the statute resolves the issue: it specifies multifamily housing and allows the HCD to define that term.[33] *See Killgore*, 51 F.4th at 983 (9th Cir. 2022).

The parties did not meaningfully address River Landon's contentions that shared elements other than walls meet the "attached units" requirement, and the order dismisses claims six and seven without prejudice.[34]

---

[29] Opp'n – ECF No. 36 at 18–19.

[30] *Id.* at 20.

[31] *Id.* at 16–17.

[32] Letter & Attachs., Ex. A to Request for Judicial Notice – ECF No. 37 at 8, 10; Letter & Attachs., Ex. B to Request for Judicial Notice – ECF No. 37 at 34, 36.

[33] Opp'n – ECF No. 36 at 18–20.

[34] *Id.* at 21.

### 2. Scoping Consultation Under SB 35 (Claim Five)

The City contends that River Landon's claim for violation of SB 35's tribal consultation requirement fails for the same reasons as its project-denial claims.[35] River Landon points to the structure of SB 35, noting that after receiving the notice of intent, SB 35 requires the local government to conduct a tribal-scoping consultation without mention of a multifamily requirement.[36]

An application for development under SB 35 requires the "development [to be] a multifamily housing development that contains two or more residential units." Cal. Gov't Code § 65913.4(a)(1). But there is no such requirement to file the initial notice of intent, which occurs "[b]efore submitting an application for a development subject to the streamlined, ministerial approval process." *Id.* § 65913.4(b)(1)(A)(i). SB 35 states that the local government "shall engage in a scoping consultation" "[u]pon receipt of a notice of intent to submit an application described in clause (i)." *Id.* § 65913.4(b)(1)(A)(i)–(ii). A multifamily requirement is not necessary to trigger a scoping consultation. That said, to the extent the City violated this requirement, the project denial — for failing to the HCD's definition for multifamily housing — means that this claim is dismissed.

### 3. Takings Claims (Claims One and Two)

River Landon asserts a takings claim based on the City's denial of its two projects (claim one) and a second claim for a temporary taking based on the scoping-consultation process (claim two).

The City contends that claim one fails because (1) the City did not violate SB 35, (2) the claim is not ripe because the City has not reached a final administrative decision about the use of the property, and (3) the claim fails on the merits because the City's conduct has not eliminated all value or developmental potential.[37] River Landon responds that the City did violate SB 35, the claim is ripe under the futility exception, and addressing the merits is inappropriate at this stage.[38]

---

[35] Reply – ECF No. 38 at 7–12.

[36] Opp'n – ECF No. 36 at 15–16, 28–29.

[37] Reply – ECF No. 38 at 12–18.

[38] Opp'n – ECF No. 36 at 21–25.

A regulatory-takings claim is ripe after a final government decision. *Pakdel v. City and County of San Francisco*, 594 U.S. 474, 477 (2021) (citing *Knick v. Township of Scott*, 588 U.S. 180, 187 (2019)). Under the futility exception, "resubmission of a development plan or the application for a variance from prohibitive regulations may be excused if those actions would be idle or futile." *Del Monte Dunes at Monterey, Ltd v. City of Monterey*, 920 F.2d 1496, 1501 (9th Cir. 1990). "The landowner bears the burden of establishing, by more than mere allegations, the futility of pursuing any of the steps needed to obtain a final decision." *Id.* "Moreover, before claiming the exception, the landowner must submit at least one development proposal and one application for a variance if meaningful application and submission can be made." *Id.*

Because the denials of the two projects did not violate SB 35, the first takings claim is not plausibly pleaded. Even if it were, the claim is not ripe because there has been no final decision, and the futility exception does not apply because there are development options that River Landon has not pursued, either under SB 35 by proposing a development plan for multifamily housing under the HCD definition or through another avenue.[39]

River Landon cites *Sherman v. Town of Chester* as an example of a government obstruction that triggered the futility exception. 752 F.3d 554 (2d Cir. 2014). In *Sherman*, Sherman sought subdivision approval for a decade and was forced to submit two amended applications in response to the defendant's conduct, which included enacting new zoning ordinances five times, announcing a moratorium on development, replacing its officials, and requiring Sherman to resubmit studies that he had already completed. *See id.* at 557, 562. *Sherman* is distinguishable from this case because, here, the duration of the alleged conduct is much less (five years versus a decade), and denying projects based on failures to meet a statutory requirement, as the City did here, is not like obstruction by enacting new laws, changing personnel, or requiring redundant studies. The City's conduct does not show futility.[40]

---

[39] Reply – ECF No. 38 at 13 (making this point).

[40] Opp'n – ECF No. 36 at 23; Reply – ECF No. 38 at 16.

The temporary takings claim (claim two) is not plausibly pleaded for the same reasons as the other takings claim: even assuming violations by the City of SB 35's scoping-consultation requirement, River Landon had other options for development that it did not pursue.[41]

### 4. Due Process (Claims Three and Four)

River Landon asserts procedural (claim three) and substantive (claim four) due-process claims based on the prolonged scoping consultation and the two project denials. Neither claim survives.

The City contends that the procedural due-process claim fails because River Landon did not identify any deadline that it violated, the allegations amount to a complaint about the speed and accuracy of the determinations, which do not support a procedural due process claim, and judicial review of the City's decisions is available.[42] River Landon counters that post-deprivation judicial review does not provide a "meaningful" chance to be heard where SB 35 was designed for streamlined approval of projects.[43]

"To prevail on a claim for a procedural due process violation, the party must prove three elements: 1) a protectable liberty or property interest, 2) government deprivation of that interest, and 3) a denial of adequate procedural protections." *Holman v. City of Warrenton*, 242 F. Supp. 2d 791, 803 (D. Or. 2002) (cleaned up) (citing *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)).

On this record, it is unclear what process River Landon alleges the City denied it. River Landon does not contend that the City's alleged exceeding of the thirty-day deadline for beginning the scoping consultation by over twenty days violated its procedural due process rights, and there is no requirement that the scoping consultation be completed within a certain timeframe.[44] Further, state law provides opportunities to seek reversal of the City's decisions.[45] *See, e.g.*, Cal. Civ. Proc. Code

---

[41] Reply – ECF No. 38 at 18.

[42] Mot. – ECF No. 28 at 23–24; Reply – ECF No. 38 at 19.

[43] Opp'n – ECF No. 36 at 27.

[44] Reply – ECF No. 38 at 19.

[45] Mot. – ECF No. 28 at 23 (making this point).

§§ 1085 (writ of mandate), 1094.5 (review of administrative decisions). The cases cited by the City involve decisions determining that more than one level of review satisfied procedural due-process requirements. These do not establish that the available processes here are constitutionally deficient.[46]

For River Landon's substantive due process claims, the City asserts that the claims are not ripe and not plausibly pleaded because the allegations do not meet the "extremely high" standard of alleging conduct that is "conscience-shocking" or done with deliberate indifference to a constitutional right.[47] River Landon counters that its due-process claims are ripe because the court can assess the constitutionality of the City's scoping consultation and project denials without a ripe takings claim and that conduct reflecting an abuse of power is sufficient to plead a plausible claim.

Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (cleaned up) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)). The "substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (cleaned up), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). And "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (cleaned up).

Because SB 35 does not apply to the projects that the City denied, River Landon has not pleaded plausible due-process violations. Even assuming that the City violated its obligation to perform a scoping consultation under SB 35, neither the duration of the scoping consultation nor the denial of the projects by the City shows the conscious-shocking conduct required for a plausible claim.

---

[46] Opp'n – ECF No. 36 at 27.

[47] Reply – ECF No. 38 at 19–20.

ORDER – No. 25-cv-04904-LB                 14

**5.  Remaining State Claims (Claims Eight through Eleven)**

Because there are no remaining federal claims, the court lacks federal-question jurisdiction. River Landon asserts that the court has diversity jurisdiction, and the City counters that River Landon has not met its burden of establishing its citizenship, pointing to the project-denial letters that were sent to River Landon a California address.[48] On this record, River Landon has not established diversity of citizenship.

River Landon says that it "is a New Mexico limited liability company, registered with the California Secretary of State and qualified to transact business in California" but does not plead facts about its principal place of business.[49] The only documents identifying an address for River Landon are the project-rejection letters sent to a San Francisco PO box.[50] The court declines to exercise supplemental jurisdiction over the state-law claims.

## CONCLUSION

The court dismisses without prejudice River Landon's SB 35 claims (claims five, six, and seven) and the takings and due process claims (claims one through four). The court declines jurisdiction over the remaining state-law claims (claims eight through eleven). Any amended complaint is due March 9, 2026, and must attach a blackline compare of the new complaint against the current complaint.

**IT IS SO ORDERED.**

Dated: February 5, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[48] Opp'n – ECF No. 36 at 30; Reply – ECF No. 38 at 20; Letters, Exs. A–B to Request for Judicial Notice – ECF No. 37 at 7, 34.

[49] FAC – ECF No. 26 at 5 (¶ 12).

[50] Letters, Exs. A–B to Request for Judicial Notice – ECF No. 37 at 7, 34.

United States District Court
Northern District of California