UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RIVER LANDON LLC, | Case No. 25-cv-04904-LB |
| Plaintiff, | **ORDER ADDRESSING MOTION TO DISMISS** |
| v. | Re: ECF No. 47 |
| MICAH HINKLE, et al., | |
| Defendants. | |

**INTRODUCTION**

This is a case about the application of Cal. Gov't Code § 65913.4 (SB 35), which provides a streamlined, ministerial approval process for development plans that satisfy a scoping consultation assessing the development's effect on California Native American cultural resources and meet certain "objective planning standards," including that the "development is a multifamily housing development that contains two or more residential units." While multifamily housing is not defined in SB 35, the statute provides that the California Department of Housing and Community Development (HCD) may adopt guidelines that support or clarify terms in SB 35. The HCD has defined "multifamily" as requiring "two or more attached residential units."

River Landon LLC applied for approval under SB 35 for two development projects (one with twenty-nine units and a second with fourteen units). The City took over two years to complete the scoping consultation and denied both projects because they were for detached, single-family

ORDER – No. 25-cv-04904-LB

housing projects. In its First Amended Complaint (FAC), River Landon asserted claims for violations of SB 35 for the denial of its projects (claims six and seven) and the prolonged scoping consultation (claim five), regulatory and temporary takings claims (claims one and two) under federal and state law, and procedural and substantive due process violations (claims three and four). The court granted the City's motion to dismiss these claims, largely because River Landon's projects did not meet the HCD's definition of multifamily. But that guideline has since been repealed.

River Landon filed a Second Amended Complaint (SAC), asserting the same claims, and the City now moves to dismiss all claims. The primary dispute is about whether the repealed HCD guidelines should inform the court's analysis. The City contends that the repealed guidelines still warrant deference and that SB 35's plain language supports dismissing the claims. River Landon asserts that the guidelines no longer apply and, even if they did, it has pleaded new facts showing attachment.

The court grants the motion in part and denies it in part. The guidelines no longer apply, and the SB 35 claims (claims five, six, and seven) are plausibly pleaded. Thus, the related state-law claims (claims eight through eleven) survive too. The court dismisses the takings and due process claims because River Landon has not addressed the deficiencies identified in the court's prior order.

**STATUTORY SCHEME**

Under SB 35, "a development proponent may submit an application for a development that is subject to the streamlined, ministerial approval process provided by subdivision (c)" if it satisfies certain "objective planning standards," including that the "development is a multifamily housing development that contains two or more residential units." Cal. Gov't Code § 65913.4(a)(1). "It is the policy of the state that this section be interpreted and implemented in a manner to afford the fullest possible weight to the interest of, and the approval and provision of, increased housing supply." *Id.* § 65913.4(u).

"Multifamily" is not defined in SB 35, but it provides that the HCD "may review, adopt, amend, and repeal guidelines to implement uniform standards or criteria that supplement or clarify

United States District Court
Northern District of California

United States District Court
Northern District of California

the terms, references, or standards set forth in this section." *Id.* § 65913.4(n). The HCD has defined multifamily as "a housing development with two or more attached residential units" that "does not include accessory dwelling units unless the project is for new construction of a single-family home with attached accessory dwelling units."[1] These guidelines were to "remain in effect until January 1, 2026," but have been "repealed" because they were not renewed.[2]

Before submitting a formal application, the applicant must file a notice of intent to submit an application that includes all the information described in § 65941.1. *Id.* § 65913.4(b)(1)(A)(i). Section 65941.1 does not mention multifamily housing or attached walls. Once the local government receives a notice of intent, it "shall engage in a scoping consultation regarding the proposed development with any California Native American Tribe that is traditionally and culturally affiliated with the geographic area" and must "take into account the cultural significance of the resource to the culturally affiliated California Native American tribe." *Id.* § 65913.4(b)(1)(A)(ii), (B). "Consultation" is defined as the "meaningful and timely process of seeking, discussing, and considering carefully the views of others." *Id.* § 65913.4(b)(7)(A). The local government has thirty days from receipt of the notice of intent to provide an affiliated California Native American tribe with formal notice, a tribe has thirty days to accept the invitation to engage in a scoping consultation, and the local government has thirty days to commence the scoping consultation. *Id.* § 65913.4(b)(1)(A)(iii)(I)–(B). If the local government and tribe either "find that no potential tribal cultural resource would be affected by the proposed development" or enter into an enforceable agreement "on methods, measures, and conditions for tribal cultural

---

[1] HCD Guidelines, Ex. 4 to Request for Judicial Notice – ECF No. 29 at 22 (§ 102(p)). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 20 (§ 100(d)); Second Am. Compl. (SAC) – ECF No. 46 at 106 (¶ 133). After the June 11 hearing on this motion, the City filed for leave to submit a draft update to the HCD guidelines for SB 35 with language stating that the "Guidelines shall remain in effect so long as the statute remains in effect." Admin. Mot. – ECF No. 56 at 2. The court denies the motion. The draft guidelines would not be helpful to this court's analysis or alter the result where, under the operative language, the guidelines are currently not effective. *See* Opp'n – ECF No. 57 at 3 (pointing out that the draft language may not survive to the final version).

ORDER – No. 25-cv-04904-LB                                3

resource treatment, the development proponent may submit" a formal application. *Id.* § 65913.4(b)(2)(A)–(C).

If a local government determines that an application under subdivision (c) "is consistent with the objective planning standards specified in subdivision (a)," as assessed under subdivision (c)(3), "the local government shall approve the development." *Id.* § 65913.4(c)(1). If the local government determines that a development submitted under SB 35 conflicts with the objective standards in subdivision (a), "the local government staff or relevant local planning and permitting department that made the determination shall provide the development proponent written documentation of which standard or standards the development conflicts with, and an explanation for the reason or reasons the development conflicts with that standard or standards." *Id.* "[A] development is consistent with the objective planning standards specified in subdivision (a) if there is substantial evidence that would allow a reasonable person to conclude that the development is consistent with the objective planning standards." *Id.* § 65913.4(c)(3).

## STATEMENT

The core facts of the SAC remain the same as in the FAC[3]:

> River Landon sought to develop a vacant property (approximately 1.4-acres) consisting of lots designated for residential use.[4] Between October 2020 and October 2022, River Landon submitted a two-unit project to the City eight times before the City determined that it was complete, but the City advised River Landon to withdraw the application and proceed under an alternate pathway.[5] River Landon opted to seek streamlined approval under SB 35 and submitted its notice of intent for a twenty-nine-unit project on May 15, 2023. On June 13, 2023, the City invited the California Native American Tribes traditionally affiliated with the property's geographic area to engage in a scoping consultation of the property.[6] On June 22, 2023, the Federated Indians of Graton Rancheria (FIGR) accepted the scoping consultation invitation.[7]

---

[3] *See* Blackline – ECF No. 46 at 79–135.

[4] First Am. Compl. (FAC) – ECF No. 26 at 3 (¶ 3), 6–7 (¶¶ 23–30).

[5] *Id.* at 8–10 (¶¶ 31–47).

[6] *Id.* at 10–11 (¶¶ 49–50, 53, 55).

[7] *Id.* at 11 (¶ 57).

United States District Court
Northern District of California

River Landon "is informed and believes . . . that on August 14, 2023, the City met with FIGR to discuss the scoping consultation for the first time."[8]

In September 2023, archaeologists concluded that no cultural resources were found or threatened by the project and passed the results to FIGR.[9] In November 2023, River Landon submitted a formal application to the City for the twenty-nine-unit project.[10] Over the next four months, the City claimed it was meeting with the tribal representatives, but there are no records of meetings about the twenty-nine-unit project.[11] In March 2024, the City communicated to River Landon that FIGR had "requested some additional analysis for the project site" and that the City would accommodate that request.[12]

In late March 2024, the City told River Landon that it had met with FIGR about the twenty-nine-unit project in August 2023, January 2024, and February 2024 and that FIGR was requesting an extension of the radius of the records search for the archeological survey from a quarter mile to a half mile.[13] In April 2024, the archeologists completed the records search and determined that there were no cultural resources within the project area, and River Landon requested that the City complete the scoping consultation by April 19, 2024.[14] In May 2024, FIGR's Tribal Chairman told River Landon that the City was holding up the project.[15]

In June 2024, the City told River Landon that the project's scoping consultation was unfinished.[16] In August 2024, River Landon sent a letter to the City saying that the City had "failed to carry out its ministerial duty to engage in a meaningful and timely scoping consultation process, and [was] instead weaponizing the consultation requirement to thwart this desperately needed housing project."[17] In January 2025, the archeologists contacted River Landon and informed them that FIGR had requested a canine survey be conducted.[18] Between March and May 2025, River Landon and the City were unable to resolve their disputes about completing the scoping consultation.[19]

River Landon filed this lawsuit in June 2025. Twenty days later, the scoping consultation concluded with an enforceable agreement to address and protect tribal

---

[8] *Id.* at 12 (¶ 60).

[9] *Id.* (¶¶ 62–64).

[10] *Id.* (¶ 65).

[11] *Id.* at 13 (¶ 68).

[12] *Id.* (¶ 69).

[13] *Id.* at 14 (¶ 72).

[14] *Id.* (¶¶ 73–75).

[15] *Id.* (¶ 77).

[16] *Id.* at 15 (¶ 80).

[17] *Id.* at 16 (¶ 85); Letter, Ex. A to FAC – ECF No. 26 at 48–51.

[18] FAC – ECF No. 26 at 17 (¶ 90).

[19] *Id.* at 17–19 (¶¶ 91–98).

United States District Court
Northern District of California

cultural resources that might be present, and the City acknowledged that the project was deemed submitted under SB 35.[20]

In August 2025, City staff notified River Landon that its proposed twenty-nine-unit project was ineligible for ministerial approval under SB 35, determining that the project was "inconsistent with City standards as well as State law" and ineligible for SB 35 because the project "propose[d] multiple, detached, independent single family dwellings per single family lot and [did] not constitute a multifamily housing development pursuant to either SB 35 or the San Rafael Municipal Code."[21] River Landon then submitted an alternative request for ministerial approval of a fourteen-unit project under SB 35, which the City denied in October 2025 because "the project [was] not a multifamily housing development" but instead "a mix of single detached family residences and detached ADUs on each lot."[22]

On December 3, 2025, the City issued a supplemental written determination that the fourteen-unit project was ineligible for approval under SB 35, explaining that the project was inconsistent with the HCD definition of multifamily.[23]

The SAC alleges additional details about River Landon's projects. The twenty-nine-unit project includes a single subterranean foundation; shared walkways, ramps, entrances, and private driveway; and a community pool accessible by all units.[24] The fourteen-unit project includes units that are organized into three buildings, each of which is a single integrated structure (with common parking, elevators, walkways, and steel screening), a common subterranean foundation for each of the three buildings, a shared private driveway, and a community pool and event space accessible by all units.[25]

As an LLC, River Landon's member is "Mountain Investments, a New Mexico business trust 100% owned by Jim Miller, an individual citizen of New Mexico."[26]

---

[20] *Id.* at 19 (¶¶ 101–04).

[21] *Id.* at 20 (¶ 106); Letter & Attachs., Ex. A to Request for Judicial Notice – ECF No. 37 at 8, 10 (cleaned up).

[22] FAC – ECF No. 26 at 20–21 (¶¶ 108–11); Letter & Attachs., Ex. B to Request for Judicial Notice – ECF No. 37 at 34, 36 (cleaned up).

[23] City Email, Ex. I to Request for Judicial Notice – ECF No. 50-1 at 14–16.

[24] SAC – ECF No. 46 at 26 (¶ 131).

[25] *Id.* at 26–28 (¶ 132).

[26] *Id.* at 7 (¶ 24).

The parties consented to magistrate-judge jurisdiction.[27] 28 U.S.C. § 636(c)(1). The court held a hearing on June 11, 2026.

## LEGAL STANDARD

### 1.  Rule 12(b)(6)

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 2.  Principles of Statutory Construction

"In interpreting a state statute, [a court] must follow the state's rules of statutory interpretation." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022). "The touchstone of statutory interpretation is the probable intent of the Legislature." *Hale v. S. Cal. IPA Med. Grp., Inc.*, 86 Cal. App. 4th 919, 924 (2001). The "first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning." *Id.* If "language that appears unambiguous on its face may be shown to have a latent ambiguity," "a court may turn to customary rules of statutory construction or legislative history for guidance." *Id.* "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." *Killgore*, 51 F.4th at 983. "When the language is clear and there is no uncertainty as to the legislative intent, [courts] look no further and simply enforce the statute according to its terms." *Id.*

---

[27] Consents – ECF Nos. 6, 17.

**ANALYSIS**

The motion hinges on whether the HCD's definition of multifamily applies even after its guidelines were repealed. It does not. Because the HCD guidelines have been repealed, there is no requirement that River Landon's projects include attached residential units, and River Landon has plausibly pleaded its SB 35 and other state-law claims. The due process and takings claims are dismissed because River Landon has not addressed the deficiencies identified in the court's previous order.

**1. SB 35 Claims (Claims Five, Six, and Seven)**

The first issue is whether the court should consider the repealed HCD guidelines that define multifamily housing as requiring attached residential units. The City argues that (1) the court should still defer to the repealed HCD definition because it was in effect when the City denied the projects, (2) the guidelines deserve great weight despite "having sunsetted," and (3) whether the project is for multifamily housing is a definitional issue and a threshold criterion, not a planning standard.[28] River Landon contends that (1) the guidelines do not apply because they have been repealed, (2) SB 35's pro-housing language in subsection (u) governs interpreting the multifamily requirement and supports granting its projects, and (3) SB 35 recognizes no difference between guidelines that have expired or sunsetted versus being affirmatively disavowed.[29] The City replies that even though the HCD guidelines expired, SB 35 itself has not changed.[30]

The City has not met its burden of showing that the guidelines warrant deference despite repeal. While the City cites cases stating that an agency's interpretation of its regulation is entitled to "great weight," none of those cases say that the same is true for guidelines that have expired or

---

[28] Mot. – ECF No. 47 at 22.

[29] Opp'n – ECF No. 50 at 19–21. The City contends that River Landon failed to respond to its argument that regardless of whether the guidelines were repealed, they were in effect during the relevant periods. Reply – ECF No. 52 at 8. But River Landon addressed this argument by asserting that the court should consider the law that is in effect today because this is a mandamus case, which the City does not refute. Opp'n – ECF No. 50 at 20–21; Reply – ECF No. 52 at 9–10.

[30] Reply – ECF No. 52 at 10.

been repealed.[31] *See Sharon S. v. Super. Ct.*, 31 Cal. 4th 417, 436 (2003); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 801 (1999); *Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal.4th 1, 12–13 (1998). The parties do not dispute that "[i]n mandamus proceedings, a reviewing court applies the law that is current at the time of judgment in the reviewing court."[32] *Make UC a Good Neighbor v. Regents of Univ. of Cal.*, 16 Cal. 5th 43, 55 (2024). Instead, the City argues that SB 35 has not changed and that the HCD's guidelines remain helpful for interpretation.[33] Without authority supporting the City's argument, the court does not defer to repealed guidelines. Thus, the court does not read SB 35's requirement that development projects be for "multifamily housing development that contains two or more residential units" as requiring attached residential units.[34] Cal. Gov't Code § 65913.4(a)(1).

The question then is whether River Landon meets SB 35's requirements without the HCD guidance. The City argues that if the legislature meant for SB 35 to cover River Landon's single-family projects, it would not have used the term "multifamily."[35] River Landon responds that the dictionary definition of multifamily ("involving or designed for more than one family") combined with SB 35's emphasis on increasing the housing supply support its projects' approval under SB 35.[36] The City does not dispute the dictionary definition of multifamily but asserts that dictionary definitions shed no light on interpreting SB 35.[37] This is not so. *Yith v. Nielsen*, 881 F.3d 1155,

---

[31] *Id.* at 8.

[32] Opp'n – ECF No. 50 at 20–21; Reply – ECF No. 52 at 9–10.

[33] Reply – ECF No. 52 at 10.

[34] SB 35 lists the multifamily requirement as one of its objective planning standards. Cal. Gov't Code § 65913.4(a)(1).

[35] Mot. – ECF No. 47 at 19.

[36] Opp'n – ECF No. 50 at 21–24.

[37] Reply – ECF No. 52 at 10–11. The City also argued that reading an attachment requirement into "multifamily" was consistent with the definition of multifamily in other statutes. *Id.* at 17–18 (citing Cal. Gov't Code §§ 65863.4(d), 65852.25(h), 12955.1.1; Cal. Health & Safety Code §§ 51603(b)(9), 17929(b)(4)). But the City waived this argument by not responding to River Landon's contention that the cited statutes define "multifamily dwelling," rather than the "multifamily housing development" at issue here. Opp'n – ECF No. 50 at 22; *see Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases).

1165 (9th Cir. 2018) ("When determining the plain meaning of language, [courts] may consult dictionary definitions.").

The fourteen- and twenty-nine-unit projects both contain two or more residential units and appear to be designed for more than one family.[38] SB 35's instruction to apply the "fullest possible weight to the interest of, and the approval and provision of, increased housing supply" only strengthens this result. Cal. Gov't Code § 65913.4(u). River Landon's project-denial claims (claims six and seven) survive.

Because the City argues that the validity of the scoping-consultation claim (claim five) is tied to the other SB 35 claims, that claims survives too.[39] The court does not consider the City's argument that this claim should be dismissed because it had already completed the scoping consultation because it was raised for the first time in the City's reply brief.[40]

### 2. Takings Claims (Claims One and Two)

River Landon contends that the court should "focus strictly" on its temporary takings claim, abandoning its regulatory takings claim.[41] The City argues that the takings claims fail because the takings claims are not ripe (there is not a final administrative decision) and other avenues for development exist.[42] River Landon responds that (1) a temporary takings claim does not require a final determination, (2) the two-year delay supports a temporary taking because SB 35's purpose is to expedite approval of projects, and (3) no reasonable applicant would incur burden of pursuing multiple entitlement pathways.[43]

The court previously determined that River Landon had not plausibly pleaded a temporary takings claim because "even assuming violations by the City of SB 35's scoping-consultation

---

[38] SAC – ECF No. 46 at 26–28 (¶¶ 131–32).

[39] Mot. – ECF No. 47 at 33.

[40] Reply – ECF No. 52 at 11–12.

[41] Opp'n – ECF No. 50 at 26.

[42] Mot. – ECF No. 47 at 26–30.

[43] Opp'n – ECF No. 50 at 26–27.

requirement, River Landon had other options for development that it did not pursue."[44] River Landon's arguments do not change that result.

River Landon cites *First English Evangelical Lutheran Church v. Los Angeles County* to support that a government burden that temporarily deprived it of "economically viable or productive use of its property." 482 U.S. 304, 319 (1987). But this argument overlooks that the deprivation must be of all use of the property, not just some.[45] *Id.* at 318 ("Temporary takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings." (cleaned up)). Without allegations that the City temporarily deprived it of all productive use, the court dismisses the takings claims.

### 3. Due Process (Claims Three and Four)

River Landon concedes its procedural due process claim by stating that the court should focus only on its substantive due process claim.[46]

Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (cleaned up) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)). The "substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (cleaned up), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). And "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (cleaned up).

The City contends that River Landon's due process claims fail because (1) River Landon has not plausibly pleaded an SB 35 violation, (2) the claims are not ripe, and (3) the court previously

---

[44] Order – ECF No. 43 at 13.

[45] Reply – ECF No. 52 at 13 (making this point).

[46] Opp'n – ECF No. 50 at 28.

ORDER – No. 25-cv-04904-LB                11

determined that River Landon's due process claims failed because, even if it had plausibly pleaded its SB 35 claims, "neither the duration of the scoping consultation nor the denial of the projects by the City shows the conscious-shocking conduct required for a plausible claim."[47] River Landon responds that it plausibly pleaded a property interest in the mandated scoping consultation and general SB 35 processing.[48]

River Landon has not engaged with the court's prior determination that even assuming a violation of SB 35, it has not pleaded conscious-shocking conduct. Thus, the court dismisses the due process claims.

### 4. Remaining State Claims (Claims Eight through Eleven)

The parties dispute whether River Landon has established complete-diversity requirement for diversity jurisdiction or plausibly pleaded its remaining state-law claims. On this record and briefing, River Landon has established diversity jurisdiction by pleading that "[t]he member of Plaintiff" (which the court reads as "only member") is "a New Mexico business trust 100% owned" by a New Mexico citizen.[49] This is sufficient for complete diversity. The City contends that River Landon has other members but did not sufficiently support its factual attack on jurisdiction.[50] With jurisdiction established, claims eight through eleven survive because River Landon has plausibly pleaded its SB 35 claims.

---

[47] Mot. – ECF No. 47 at 31–32; Reply – ECF No. 52 at 16–17 (citing Order – ECF No. 43 at 14).

[48] Opp'n – ECF No. 50 at 28–29.

[49] SAC – ECF No. 46 at 7 (¶ 24).

[50] Reply – ECF No. 52 at 18.

## CONCLUSION

The court dismisses River Landon's takings and due process claims (claims one through four). Any amended complaint is due August 4, 2026, and must attach a blackline compare of the new complaint against the current complaint. Claims five through eleven survive. This order resolves ECF No. 47.

**IT IS SO ORDERED.**

Dated: July 6, 2026

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

ORDER – No. 25-cv-04904-LB                         13